UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF MISSISSIPPI

SOUTHERN DISTRICT OF MISSISSIPPI
FILED
FEB 11 2022
ARTHUR JOHNSTON
BY _____ DEPUTY

| | |
|---|---|
| IN THE MATTER OF )<br>)<br>THE EXTRADITION OF )<br>)<br>FREDDIE LEE STAPLETON )<br>) | Misc. No. 3:22-mc-66 FKB |

COMPLAINT
(18 U.S.C. § 3184)

I, the undersigned Assistant United States Attorney, being duly sworn, state on information and belief that the following is true and correct:

1. In this matter, I represent the United States in fulfilling its treaty obligation to Germany.

2. There is an extradition treaty in force between the United States and Germany, entitled the Treaty Between the United States of America and the Federal Republic of Germany Concerning Extradition, signed on June 20, 1978, as supplemented and amended by the Supplementary Extradition Treaty with the Federal Republic of Germany, signed on October 21, 1986, and the Second Supplementary Treaty to the Treaty Between the United States of America and the Federal Republic of Germany Concerning Extradition, signed on April 18, 2006 (collectively, the "Treaty").

3. Pursuant to the Treaty, the Government of Germany has submitted a formal request through diplomatic channels for the extradition of Freddie Lee Stapleton ("STAPLETON").

4. According to the information provided by the Government of Germany, STAPLETON was charged with attempted aggravated murder in violation of section 211 subsection 2 and section 22 of the German Criminal Code.

5. This offense was committed within the jurisdiction of Germany. A warrant for

Stapleton's arrest was issued on May 19, 2020, by an investigating judge for the Local Court of Ulm, at Ulm, Germany.

6. The warrant was issued on the basis of the following facts:

a) More than thirty-five years ago, a 29-year-old woman was brutally raped, beaten, and left for dead in Göppingen, Germany. The case sat cold despite authorities' diligent efforts to identify the assailant. Finally, advances in the field of DNA trace analysis together with international mutual legal assistance requests allowed Germany to identify STAPLETON as the individual that perpetrated this heinous crime.

b) The crime occurred on the evening of October 23, 1985, at approximately 10:20 p.m., as the victim, S.A.G., walked home from her sewing class. As S.A.G. passed through a public park, STAPLETON approached her from behind, threatening her with a knife and saying words to the effect of "come with me or I will kill you." STAPLETON grabbed S.A.G., dragging her off the walking path and onto the grass. S.A.G. cried out for help and fought back against STAPLETON, biting his hand causing it to bleed. STAPLETON violently stripped S.A.G. down to her blouse and undershirt, while strangling her and punching her repeatedly in the face. STAPLETON then raped her vaginally and anally multiple times.

c) After he raped her, STAPLETON left S.A.G., who laid motionless on the ground pretending to be dead. A short while later, STAPLETON returned carrying a wooden club that he used to strike S.A.G. forcefully and repeatedly in the head. STAPLETON again left S.A.G. lying motionless on the ground. He returned a short while later driving his vehicle through the park towards her body. STAPLETON put the nearly unconscious S.A.G., who continued to feign death, and her blood-stained clothing in his car and drove to the outskirts of town. STAPLETON dumped S.A.G. and her clothing in a roadside ditch. He covered her body with

tree branches and leaves, and drove away.

d) S.A.G. laid motionless for some time before she was able to drag herself, half-naked and bleeding profusely, to a nearby farmhouse. Mr. Hägenläuer answered the door and called the police.

e) S.A.G. was taken to the hospital where doctors determined that she sustained two broken ribs, a ruptured ear drum, a laceration to the left side of her head, pressure marks on her larynx as well as bruises and swelling throughout her body. A gynecological exam confirmed the presence of spermatozoa in the victim's vagina.

f) S.A.G. told police that her assailant was black and spoke German with an American accent. At the time, a number of American military members were stationed in Göppingen. The police searched the barracks for anyone matching S.A.G.'s description and who had a wound on their hand, but found none. Police showed S.A.G. several photographs of individuals who matched the description she provided, but she was not able to make a positive identification. Police also posted flyers, passed out leaflets, and offered a reward for information about the assailant.

g) At the park, German authorities recovered a broken wooden club with traces of blood and collected samples from 8 traces of blood found on the walking path. They also found S.A.G.'s glasses, purse, and buttons from her coat. In the roadside ditch, German authorities recovered S.A.G.'s coat, sweater, pants, and shoes. Her tights and blood-stained underwear were found in a meadow on the opposite side of the road.

h) German authorities identified multiple suspects, but each was ruled out by comparing the suspects' blood to that found at the crime scene. In 2001, Germany utilized advances in the field of DNA trace analysis to develop a DNA profile of the perpetrator based on

blood samples collected at the two crime scenes. Through a mutual legal assistance request to the United States, Germany confirmed that the DNA profile created from evidence found at the scene matched the DNA profile of STAPLETON stored in the FBI database, CODIS. In 2019, Germany obtained a saliva swab from STAPLETON. The Forensic Institute of the State Office of Criminal Investigation at Baden-Württemberg analyzed the saliva swab and determined that it contained DNA found on paving stones at the park and in S.A.G.'s underwear and tights found near the roadside ditch. The statistical frequency of such a match was determined to be 1 in 536 septillion ($536 \times 10^{24}$).

7. Stapleton may be found within the jurisdiction of this Court at 3431 Kites Avenue, Pearl, Mississippi 39208.

8. Stacy Hauf, an Assistant Legal Adviser in the Office of the Legal Adviser of the United States Department of State, has provided the United States Department of Justice with a declaration authenticating a copy of the diplomatic note by which the request for extradition was made and a copy of the Treaty, stating that the offenses for which extradition is demanded are provided for by the Treaty, and confirming that the documents supporting the request for extradition bear the certificate or seal of the Ministry of Justice, or Ministry or Department responsible for foreign affairs, of Germany, in accordance with Article 29 of the 1978 Treaty, as amended by Article 6 of the 2006 Second Supplementary Treaty, so as to enable them to be received into evidence.

9. The declaration from the U.S. Department of State with its attachments, including a copy of the diplomatic note from Germany, a copy of the Treaty, and the certified documents submitted in support of the request, (marked collectively as Government's Exhibit #1) are filed with this complaint and incorporated by reference herein.

10. Stapleton would be likely to flee if he learned of the existence of a warrant for his arrest.

WHEREFORE, the undersigned requests that a warrant for the arrest of the aforenamed person be issued in accordance with 18 U.S.C. § 3184 and the extradition treaty between the United States and Germany, so that the fugitive may be arrested and brought before this Court to the end that the evidence of criminality may be heard and considered and that this complaint and the warrant be placed under the seal of the Court until such time as the warrant is executed.

Theodore M. Cooperstein (MSB#106208)
Assistant United States Attorney

Sworn to before me and subscribed in my presence this 30th day of November, 2021, at Jackson, Mississippi.

United States Magistrate Judge